IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES EDWARD VAN NORT,

    Plaintiff,                        No. CIV S-02-0636 DFL DAD P

  vs.

JAY PLUNKETT, et al.,

    Defendants.                  <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

       Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. Defendants' motion for summary judgment is before the court.

BACKGROUND

       Plaintiff alleges that his Eighth Amendment rights were violated by two prison officials at California Medical Facility, where plaintiff remains confined. Plaintiff seeks damages.

       Plaintiff alleges as follows: he was employed in the book bindery from February 1984 through May 1990; as bindery superintendent, defendant Jay Plunkett was in charge of training and supervising all staff and inmate workers at the bindery; as supervisor of the silk screen department where plaintiff worked, defendant Plunkett was in charge of issuing materials used in that department and was in charge of training plaintiff in the handling of those materials;

1

as assistant superintendent of the bindery, defendant D. Probst was in charge of the bindery during the night shift; plaintiff worked many hours of overtime on the night shift from 1985 through 1987; the defendants caused plaintiff to be exposed to and contaminated with hazardous and toxic materials that are known carcinogens without taking protective measures and without warning, instructing, or educating plaintiff in the proper handling and disposal of hazardous and toxic materials or in the procedures to follow if contaminated with a hazardous or toxic material; after plaintiff left the bindery job, he suffered many medical problems; plaintiff was diagnosed with cancer on November 13, 1992; plaintiff began to pass out for no apparent reason and suffered a fall on April 26, 1996, that resulted in a severely broken leg; plaintiff began to investigate and in 1997 received information that led him to believe he had been exposed to hazardous and toxic materials that were in part or wholly responsible for his medical problems.[1]

The undersigned determined that plaintiff's complaint states cognizable claims for relief. After service of the complaint, defendants moved to dismiss the action pursuant to Rule 12(b)(6) on the grounds that the action is barred by the statute of limitations and by the California Worker's Compensation and Insurance Act. Defendants also moved to dismiss the action pursuant to unenumerated Rule 12(b) for failure to exhaust available administrative remedies. The motion to dismiss was denied on September 29, 2003.

Defendant Plunkett filed an answer on October 14, 2003. A discovery order was issued on October 28, 2003. Defendant Probst's answer was filed on December 29, 2003. A scheduling order was issued on March 30, 2004. Discovery closed on July 2, 2004.[2] Defendants filed their timely motion for summary judgment on September 3, 2004, the final day for filing

---

[1] Plaintiff alleged these claims in Van Nort v. Rushen, case No. CIV S-97-1081 DFL DAD P. On February 13, 2002, defendants' motion for judgment on the pleadings was granted and the action was dismissed without prejudice for failure to exhaust administrative remedies prior to bringing suit. Plaintiff filed the present action on March 27, 2002.

[2] Defendants requested and were granted an extension of time to July 30, 2004, to file a motion to compel discovery. It appears that the dispute that gave rise to the request was resolved, as no motion to compel was filed.

non-discovery pretrial motions. By order filed December 27, 2004, the dates set for pretrial conference and jury trial were vacated.

STANDARDS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Summary judgment should be entered, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. Summary judgment should be granted "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving parties meet their initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of his pleadings but is required to tender evidence of specific facts in the form of affidavits and

1  admissible discovery material in support of the contention that a dispute exists.  Fed. R. Civ. P.
2  56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party must show that any fact in
3  contention is material, i.e., a fact that might affect the outcome of the suit under the governing
4  law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a
5  verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986);
6  <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987); <u>T.W. Elec. Serv., Inc. v.
7  Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

8         In trying to establish the existence of a factual dispute, the party opposing
9  summary judgment need not establish a material issue of fact conclusively in his or her favor.  It
10 is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
11 parties' differing versions of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the
12 "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see
13 whether there is a genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P.
14 56(e) advisory committee's note on 1963 amendments).

15        The evidence of the party opposing summary judgment is to be believed, and all
16 reasonable inferences that may be drawn from the facts placed before the court must be drawn in
17 favor of the party opposing summary judgment.  <u>Anderson</u>, 477 U.S. at 255; <u>Matsushita</u>, 475
18 U.S. at 587.  An inference will not be drawn out of the air, however; it is the opposing party's
19 obligation to establish a factual predicate from which an inference may be drawn.  <u>Richards v.
20 Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902
21 (9th Cir. 1987).  The opposing party "must do more than simply show that there is some
22 metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not
23 lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"
24 <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

25        On June 20, 2002, the court advised the pro se plaintiff of the requirements for
26 opposing a motion brought by defendants pursuant to Rule 56 of the Federal Rules of Civil

Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

### STANDARDS APPLICABLE TO PLAINTIFF'S CIVIL RIGHTS CLAIMS

The Civil Rights Act under which plaintiff is proceeding provides that

> [e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires an actual connection or link between the actions of each defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and therefore, when a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged and proved. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

The Eighth Amendment prohibits cruel and unusual punishments. U.S. Const. amend. VIII. It is well established that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). However, neither accident nor negligence constitutes cruel and unusual punishment, for "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley,

475 U.S. at 319.  In order to prevail on any claim of cruel and unusual punishment, a prisoner must prove facts that satisfy a two-part test.  First, the prisoner must prove that objectively he suffered a sufficiently serious deprivation.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Second, the prisoner must prove that subjectively each defendant acted with deliberate indifference in allowing or causing the prisoner's deprivation to occur.  Id. at 299.  It is insufficient to show mere negligence or error on the part of the defendant.  Id.

An inmate's health and safety are conditions of confinement subject to the strictures of the Eighth Amendment.  Wilson, 501 U.S. at 303.  An injury to a prisoner's health or safety "translates into constitutional liability" for the prison officials responsible for a prisoner's safety when the deprivation suffered is sufficiently serious and each official had a sufficiently culpable state of mind in causing or allowing the deprivation to occur.  Farmer, 511 U.S. at 834.  Where a prisoner alleges failure to prevent harm, he or she satisfies the "sufficiently serious" requirement by proving the existence of conditions posing a substantial risk of serious harm.  Id. at 834; see also Helling v. McKinney, 509 U.S. 25, 33-34 (1993).  However, a prison official has a sufficiently culpable mind only where "the official knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact.  Id. at 842.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

THE RECORD BEFORE THE COURT

I. Defendants' Arguments and Evidence

Defendants assert that they are entitled to summary judgment because plaintiff cannot demonstrate that the cause of his medical problems was defendants' deliberate indifference to his safety or medical care.

6

Defendants present a statement of undisputed facts grounded on the allegations of plaintiff's complaint and plaintiff's testimony when deposed on June 30, 2004. The record establishes the following facts: from February 28, 1984, through May 1990, plaintiff was employed as a silk screen printer in the Prison Industry Authority ("PIA") book bindery located on the grounds of California State Prison-Solano; during three of his six years of employment in the book bindery, plaintiff worked with hazardous chemicals in a small room; the PIA did not provide plaintiff with a Material Safety Data Sheet ("MSDS") for any chemical to which he was exposed; the PIA did not provide plaintiff with training on the safe handling or disposal of the chemicals; after plaintiff left the book bindery in 1990, he began to experience medical problems, including cancer, lung problems, and chronic fainting spells; on November 17, 1992, plaintiff was diagnosed with cancer, for which he received radiation treatment between December 4, 1992, and January 15, 1993; on April 26, 1996, plaintiff experienced a fainting spell that resulted in a broken leg; after the fainting spell, plaintiff began to investigate possible causes of his medical problems; in April 1997, plaintiff acquired 1996 MSDS sheets for several of the chemicals he believes he was exposed to during his employment at PIA; plaintiff does not know whether the chemicals included in the 1996 MSDS sheets are the same chemicals he was exposed to during his employment at the book bindery; if the chemicals in the MSDS sheets are the ones to which he was exposed, he does not know whether the rate of exposure was higher than recommended by the manufacturer or whether the exposure was toxic; plaintiff does not know whether either defendant knew that any of the chemicals were dangerous or that plaintiff's exposure exceeded occupational limits recommended by the manufacturer; plaintiff believes the chemical crystalline silica is a known carcinogen, and he suspects that crystalline silica caused his cancer; plaintiff is unsure whether crystalline silica was used in any of the ink colors he used at the bindery between 1984 and 1990; plaintiff has had many illnesses, most recently testicular cancer; he does not know what caused the cancer but suspects it resulted from his employment at the print shop; plaintiff has smoked cigarettes and chewed tobacco for over thirty years; plaintiff

was exposed to asbestos, a cancer causing substance, while employed at California Men's Colony but has not been diagnosed with asbestosis.

Defendants acknowledge that an inmate's right to safety may be violated by prison conditions that exacerbate underlying safety hazards, particularly when the inmate is unable to avoid those hazards by himself. Defendants cite the two requirements that plaintiff must meet to prove a constitutional violation for failure to protect his health and safety: (1) the existence of a deprivation that is, objectively, sufficiently serious and (2) the requisite level of deliberate indifference as established by evidence that each defendant knowingly disregarded an excessive risk to his health and safety. Defendants cite well established authority that prison officials may not be held liable if they were unaware of a risk or if they responded reasonably to a known risk. Defendants argue that, even if plaintiff was exposed to toxic chemicals, he cannot show that the chemicals to which he was actually exposed contained carcinogenic substances, that his exposure to such chemicals exceeded recommended occupational limits, that any overexposure was dangerous to his health, or that there was a substantial risk of harm to his health and safety that both defendants consciously ignored. Defendants conclude that, in the absence of any showing of a causal link between plaintiff's work and his present illnesses, and in the absence of any evidence of a culpable mind, defendants are entitled to judgment in their favor.

Defendants also argue that they are entitled to qualified immunity because it would not have been clear to a reasonable print shop supervisor that allowing plaintiff to use print shop chemicals would create an excessive risk of serious harm. Defendants contend that qualified immunity is appropriate here, where plaintiff admits he does not know whether the defendants were aware that the chemicals were toxic and does not know whether his illnesses resulted from chemicals he used on his prison job.

II. Plaintiff's Arguments and Evidence

A party opposing a motion for summary judgment is required to reproduce the facts contained in the moving party's statement of undisputed facts and to admit the facts that are

undisputed and deny those that are disputed, including with each denial a citation to evidentiary documents relied upon in support of the denial. Local Rule 56-260(b). The opposing party may also file a concise statement of disputed facts, citing the source thereof in the record, that contains additional material facts as to which there is a genuine issue precluding summary judgment. Id. Plaintiff has not reproduced defendants' statement of undisputed facts and admitted or disputed each fact. Nor has plaintiff provided his own statement of disputed facts that preclude summary judgment. Plaintiff offers argument and provides five exhibits that are identical to exhibits attached to his complaint.

Plaintiff argues that he has shown the following: he worked with and was exposed to many toxic chemicals; defendants supervised the silk screen department and supervised him; defendants received the toxic chemicals and materials he worked with; defendants did not give him any material safety data sheets, thereby depriving him of knowledge about the chemicals he used on the job and causing him to become contaminated with toxic chemicals he believes to be the cause of some of his medical problems. Plaintiff cites no evidentiary documents in support of these contentions but apparently relies on the allegations of his complaint and the five exhibits attached to his opposition. The exhibits are four material safety data sheets dated 1996 and a two-page document providing information about material safety data sheets in general. (See Pl.'s Opp'n, Exs. 1-5 & Compl., Exs. 12 through 16.)

Plaintiff argues that the defendants knew or should have known that the materials he used were toxic and hazardous and that he was using them without proper training. Plaintiff asserts that defendants' deliberate indifference is shown by their failure to furnish material safety data sheets and their failure to train him in how to handle the materials he used on the job. Plaintiff contends that defendants are not entitled to qualified immunity because the Hazardous Substances Information and Training Act became effective on February 21, 1983, and defendants violated clearly established law when did not provide him with material safety data sheets despite the fact that they supervised him and were responsible for training him.

## ANALYSIS

Because plaintiff will bear the burden of proof at trial on each element of his Eighth Amendment claims, defendants' summary judgment motion may properly be made in reliance solely on plaintiff's complaint and deposition testimony. Upon consideration of defendants' arguments and the portions of the record cited in support of their motion, the undersigned finds that defendants have pointed to evidence demonstrating that there is no genuine issue as to any material fact concerning plaintiff's Eighth Amendment claims and that defendants are entitled to judgment as a matter of law.

The defendants having borne their initial responsibility, the burden shifts to plaintiff to establish the existence of genuine issues of material fact requiring a trial. As the party who will bear the burden of proof at trial, plaintiff may not rely on the allegations of his complaint but must provide evidence that demonstrates the existence of genuine issues as to material facts. Because both defendants are supervisory personnel, plaintiff's evidence must establish a specific causal link between each defendant and the alleged constitutional violations.

Assuming for purposes of this discussion that plaintiff's deprivation was sufficiently serious, the undersigned finds that plaintiff has cited no evidence that either defendant knew of a substantial risk of serious harm to plaintiff's health and safety at the relevant times. Nor has plaintiff cited evidence that either defendant knew of facts from which the inference of a substantial risk could have been drawn and actually drew the inference at any time relevant to plaintiff's claims. Finally, plaintiff has not provided any evidence that creates a dispute of fact in this regard.

Plaintiff worked in the bindery for almost a year before defendant Plunkett arrived and almost two years before defendant Probst arrived:

> Q. So who taught you how to mix and do all the things you learned to do?
>
> A. It was various. I watched. Don Jamison taught me. Ramos schooled me. Plunkett came in. Since he was in the

|   |   |
|---|---|
| 1 | printing field, he showed me different ways to make different colors of ink, et cetera, you know, so it was – |
| 2 | |
| 3 | Q. When did Plunkett begin working with you? |
| 4 | A. I don't remember exactly when they came in. I think the last of '84, I think that's what [sic] he started. |
| 5 | Q. And so Mr. Ramos was only there for a short period of time? |
| 6 | |
| 7 | A. Yeah. He retired, and Plunkett took his place is eventually what happened. Ramos was there – Ramos was there for – even during the time that Plunkett was there. I don't remember when Mr. Plunkett became the bindery superintendent, but he did after Ramos retired. |
| 8 | |
| 9 | Q. When did Ms. Probst begin working with you? |
| 10 | A. A year and a half, two years. |
| 11 | Q. What did Plunkett tell you about any of the compounds you were working with? |
| 12 | |
| 13 | A. Really nothing, you know. They were ink, and that's silk screen ink, you know. He didn't say anything about what they were or what they weren't or what they were made out of. |
| 14 | |
| 15 | Q. Do you have any reason to believe that he knew that they were made out of anything harmful? |
| 16 | |
| 17 | A. I can't say what he knew or didn't know, you know. I mean, the man was in the printing field for, you know, years before he came to work in the bindery. And he went into the silk screening department, so he must have had some idea of what was what. You can't work with that stuff for very long without finding out what's involved in it, you know. |
| 18 | |
| 19 | |
| 20 | Q. What about Ms. Probst, did she say anything to you that would lead you to believe – |
| 21 | |
| 22 | A. Well, she came from the state printing office. I don't know what she knew about it. She'd come in there and try to tell us what to do. She was more or less just a supervisor, not telling us how to do the material, but just telling us, you know, we need this, this, and this. |
| 23 | |
| 24 | |
| 25 | (Van Nort Dep. at 24-25.) |
| 26 | ///// |

11

Plaintiff's evidence of a substantial risk of harm to his health and safety consists solely of material safety data sheets from 1996 for screen ink thinner, epoxy resin catalyst, and screen inks. Health hazard data for the screen ink thinner and epoxy resin catalyst do not indicate any carcinogens. (Pl.'s Opp'n, Exs. 1 & 2.) Health hazard data for some of the screen inks indicate, under the heading "Effects of Overexposure," that some colors in the product line contain crystalline silica, "a probable carcinogen," but that overexposure "should not occur during normal use." (Id., Ex. 3.) Health hazard data for other screen inks indicate, under the heading "Effects of Overexposure," that these inks contain lead and chromium and their compounds, which are classified as carcinogens, and cadmium and its compounds, which are classified as suspect carcinogens. (Id., Ex. 4.) Plaintiff offers no evidence that the chemical composition of the inks in 1996 was identical to the composition of the inks he used between 1984 and 1990. Moreover, plaintiff offers no evidence that his use of the inks exceeded "normal use," that he suffered overexposure to any inks that contained carcinogens, or that either defendant had any reason to believe plaintiff was being exposed or overexposed to carcinogens.

> Q. And the crystalline silica you believe is the substance that may have caused your testicular cancer?
>
> A. I don't know whether it did or didn't. I know it's a carcinogen, you know.
>
> Q. But what I'm trying to understand is – my goal here is to discover the facts that you possess. And so what I'm trying to find out –
>
> A. Well, that's what led me to believe that I got cancer from using it was that it states that it's a known carcinogen. . . .

(Id. at 44-45.)

> Q. So how do you know that your exposure to the crystalline silica exceeded the respirable fraction of dust?
>
> A. I – I don't really, you know.
> . . . .

1  Q. Okay. Do you have any facts that Mr. Plunkett was aware that you were exceeding the occupational exposure?

A. No, I have no facts of that. I have no facts that Mr. Plunkett nor Ms. Probst nor anybody else in the bindery was aware of whether I was exceeding it or not. All I'm saying is someone removed the material data safety sheets. I put the blame on Plunkett.

Q. And why do you believe that Plunkett removed the sheets?

A. I don't have an answer for that. You know, I wouldn't think that the – I lost the word – warehouse would remove it. You know, the warehouse, they don't care what's in there. They just open it up to be sure that they have got a packing list and they don't have a machine gun in there, you know.

(Id. at 47-48.)

Q. For the cadmium, the lead, and the chromium?

. . . .

Now, what facts do you have that your exposure exceeded the occupational limits?

A. Well, there again, I have no facts that the exposure exceeded the occupational limits. I can only go by the amount of work that was done by myself and other people in there. Working with it eight hours a day, you know, days on end, I imagine we exceeded the limits on it . . . .

(Id. at 49.)

Q. . . . . What fact do you have that the warnings that were contained in MSDS sheets that would have been produced between 1984 and 1987 contained the same information as the MSDS –

A. I have no facts, because I didn't see the material data safety sheets back then so I don't have a copy of them. I never received a copy of them, therefore I don't know what they contained back then.

Q. So what fact do you have that Mr. Plunkett or Ms. Probst were aware that the ink may have potentially carcinogenic compounds?

A. I have no proof that they knew that.

13

(Id. at 52.)

      A.    . . . . I just – you know, the whole thing boils down to I'm not really looking to hurt Plunkett or Probst or anybody else. I'm mad as hell because nobody told me about this stuff, you know. Whether it caused my cancer or not, that's up in the air.

(Id. at 62.)

      A.    But the main thing is – is I'm just peeved at these people for not telling me. You know, I'm – and as far as Plunkett goes and as far as Probst goes, I like both of them. I've always liked Jay. Jay is very good people, you know, but the fact is somebody – and I can only blame him because he's the head of the thing that had the responsibility to do it, to remove the MSDSes. Didn't give them to me, didn't show them to me, didn't make a book available to me, you know.

(Id. at 64.)

The fact that defendant Plunkett is "the head of the thing" fails to establish a specific causal link between the defendants and the alleged failure to protect plaintiff. Plaintiff has not demonstrated any disputed material issue of fact concerning either defendant's actual knowledge of facts from which he or she could have inferred a substantial risk of harm to plaintiff at any time during his employment in the bindery, and neither defendant can be presumed to have known about such a risk merely because of his or her supervisory position. See Roberson v. Briddle, No. CIV S-03-0645 LKK JFM P, 2005 WL 1366516, at *1 (E.D. Cal. May 18, 2005) (adopting magistrate judge's recommendation that summary judgment be granted for defendants who required prisoner to use a toxic substance to strip wax from his cell walls); Crawford v. Coughlin, 43 F. Supp. 2d 319, 323-24 (W.D.N.Y. 1999) (granting summary judgment for the director of prison industries and the quality control supervisor where inmate sought damages for exposure to dangerous chemicals while employed in the metal shop); Carter v. Cambra, No. C 95-2439 FMS, 1996 WL 590590, at *2-3 (N.D. Cal. Oct. 8, 1996) (granting summary judgment for defendants on inmate's claims of toxic vapors in the ventilation system and chemicals in the drinking water).

Upon careful consideration of plaintiff's arguments and evidence, and drawing all inferences in favor of plaintiff, the undersigned finds that plaintiff has failed to demonstrate the existence of a genuine issue of material fact concerning the subjective element of his Eighth Amendment claims. In the absence of any evidence that defendants knew of and disregarded an excessive risk to plaintiff's health at any relevant time, the record, taken as a whole, could not lead a rational trier of fact to find that either defendant had a sufficiently culpable state of mind at the relevant times. Defendants are therefore entitled to summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' September 3, 2004 motion for summary judgment be granted and this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file and serve written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections should be filed and served within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 1, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
nort0636.57